UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**LA TUNDA JONES, ET AL.,**

　Plaintiffs,

v.　　　　　　　　　　　　　　　　**No. 4:25-cv-00707-P**

**TYLER MARTIN, ET AL.,**

　Defendants.

## MEMORANDUM OPINION & ORDER

On July 4, 2025, Plaintiffs La Tuna Jones and Marcus Steele, filed a complaint alleging Defendant Officers Tyler Martin, Ryan Wheelan, and the City of Fort Worth violated 42 U.S.C. § 1983 due to a Fourth Amendment violation in which the Officer(s) shot and injured Plaintiffs. ECF No. 1. In response, on August 22, 2025, the City of Fort Worth filed a Motion to Dismiss. ECF No. 5. On September 8, 2025, Defendant Wheelan filed a Motion to Dismiss. ECF No. 9. On September 25, 2025, Defendant Martin filed his Motion to Dismiss. ECF No. 13. Having considered the filings and for the reasons detailed below, the Court finds that the all Motions to Dismiss should be **GRANTED**.

## BACKGROUND

Plaintiff's claims against the City and the individual defendants arise out of the shooting of Plaintiffs. ECF No. 1. Plaintiff specifically alleges (1) Officers Martin and Wheelan used excessive force against Plaintiffs in violation of § 1983 and the Fourth Amendment; (2) the City violated § 1983 and the Fourth Amendment by ratifying an unconstitutional custom, policy or practice, which caused the alleged constitutional harm; (3) the City violated § 1983 and the Fourth Amendment by failing to train the Officers, which caused the alleged constitutional harm; and (4) the City violated § 1983 and the Fourth Amendment by failing to discipline or supervise the Officers, which caused the alleged constitutional harm. ECF No. 1.

The shooting took place in the early morning hours of July 5, 2023, near the conclusion of a 4th of July block party. ECF No. 1 at 1. The Police Officers allegedly arrived on the scene due to an altercation taking place between suspects; the altercation had nothing to do with the Plaintiff bystanders. ECF No. 1 at 5. Shortly after arriving on the scene, in an alleged attempt to respond to indiscriminate shooting between the suspects, the Plaintiffs allege that the Officers quickly fired back without verbal warning—accidentally striking the bystanders as Plaintiffs allege. ECF No. 1 at 5. But it is ultimately uncertain whether the shots that hit the bystanders came from the suspects or the Defendants, and Plaintiffs do not specify which Defendant hit which Plaintiff. ECF No. 1 at 5. Plaintiff Jones was leaving the party with her family, and Plaintiff Steele was helping to clean up when the shooting took place. ECF No. 1 at 4. Jones was struck in the hip, and Steele was struck in the leg. ECF No. 1 at 6.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid

dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**B. Section 1983 and Qualified Immunity**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

1. The *Monell* standard

To hold a city liable under § 1983, a plaintiff must show that "the municipality itself caused" the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). Such constitutional violations may occur due to the municipality's official, promulgated policies; its pervasive customs or practices; its failure to train, supervise, or discipline employees; or decisions or acts by final municipal policymakers. *Monell*, 436 U.S. at 690–95. To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491, 529 (W.D. Tex. 2025) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)). If an official policy is not explicit, "widespread practice of city officials" can suffice if the practice is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* If no constitutional violation occurred, the plaintiff's *Monell*

claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A *Monell* claim predicated on a failure-to-train theory requires a plaintiff to show "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Such a claim must be brought against the municipality's final policymaker. *Harris*, 489 U.S. at 389. And "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." C*onnick v. Thompson*, 563 U.S. 51, 61 (2011).

To establish inadequate training procedures, "a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). "The inadequacy of training must be closely related to the injury." *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

To demonstrate that a municipality's failure to investigate or discipline amounts to an unlawful policy or custom, a Plaintiff must prove: (1) the city's failure to discipline amount to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights. *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023).

Additionally, deliberate indifference is a stringent standard under § 1983. To show deliberate indifference, "[n]otice [to the municipality] of a pattern of similar violations is required." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quotation marks omitted). "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation marks omitted). Thus, the municipal employees' actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.

4

1984); *cf. Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (holding that twenty-seven prior incidents of excessive force over a three-year period were not sufficiently numerous to constitute a pattern). A narrow exception to the pattern of similar violations exists but "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (emphasis added).

## 2. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. In excessive force cases, the second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).[1]

---

[1]Though this test appears to be straightforward, trying to make sense of its application or finding any consistency under Fifth Circuit precedent is often a difficult task for lowly trial court judges. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458–60, 462 (5th Cir. 2022) (relying on extra-record sources such as The New York Times and The Guardian to find no qualified immunity for an officer's use of deadly force where suspect resisted arrest and drove over another officer with his vehicle) *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding that qualified immunity barred suit when

### C. Fourth Amendment

During a detention or arrest, the right to be free from the use of excessive force is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state an excessive force claim, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted). The second and third elements collapse into a single objective-reasonableness inquiry, in which the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting Graham, 490 U.S. at 396).

Courts generally examine excessive force claims considering the "totality of the circumstances" to determine whether an officer's actions were objectively unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991–92 (5th Cir. 2011). When an officer uses deadly force, however, use of the "'objective reasonableness' balancing test is constrained." *Garza v. Briones,* 943 F.3d 740, 745 (5th Cir. 2019) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). To that end, the use of deadly force violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

## ANALYSIS

Plaintiffs fail to state a claim against the City under § 1983 for an unconstitutional custom or policy. Plaintiffs also fail to state a claim against the Officers under the same.

---

officers found a suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames"). No wonder, even the appellate court describes this uneasy analysis as the "QI dance." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

**A. Plaintiff fails to state a claim against the City.**

Plaintiff fails to state a claim of *Monell* liability against the City.

1. Plaintiff fails to state a claim against the City under § 1983 for an unconstitutional custom.

Plaintiffs assert on Count II that the City acted with gross negligence and reckless and deliberate indifference to the public by applying an official policy of using excessive force and maintaining practices that allowed for such force to be employed. But Plaintiffs failed to properly allege any of the required elements under *Monell*. They point to no written policy or communication. Instead, they only vaguely assert that the City, the Fort Worth Police Department, and former Chief Neil Noakes enforced and applied an official policy recognized by the City and the Fort Worth Police Department. Without alleging facts that point to an implicit official policy of the City, there is no basis to plausibly conclude that it was the moving force behind a constitutional violation.

Therefore, Plaintiff's *Monell* claim against the City on Count II should be and hereby is **DISMISSED with prejudice.**

2. Plaintiffs fail to state a claim against the City under § 1983 under a failure to train theory.

Plaintiffs' Complaint against the City likewise falls flat on the failure to train front. Plaintiffs allege the City failed to maintain proper training instructing officers on the appropriate manner to handle individuals with non-lethal tactics and on the appropriateness of deadly force. Accordingly, Plaintiffs contend that the City adopted a custom of using deadly force against members of the public when no immediate risk of harm was posed as a result of this failure to train. Therefore, Plaintiffs speculate that the Officers felt free to use excessive force to bring the chaotic situation under control.

But the City claims that Plaintiffs fail to adequately plead all three elements of the failure-to-train theory under *Monell*.[2] The City posits Plaintiffs fail to allege an actual inadequate training policy adopted by

---

[2]The City does not dispute that it is the final policy maker.

the City or a pattern of similar incidents that give rise to deliberate indifference. The City also contends that Plaintiffs' constitutional rights were not violated and, thus, Plaintiff's *Monell* claim necessarily fails.

Indeed, Plaintiffs fail to plead an inadequate training policy adopted by the City. Plaintiff does not identify an inadequate formal policy. Thus, for Plaintiff's *Monell* claim to survive, Plaintiff would need to plead a "persistent, widespread practice of city officials or employees . . . so common and well settled as to constitute a custom that fairly represents municipal policy." *Thompson ex rel. Neveah T.*, 789 F. Supp. 3d at 529. Plaintiff does not do so. Plaintiffs instead rests the claim on the Officers' training alone and argue that their training was deficient or inadequate. However, this is not sufficient to state a claim for failure to train. *Harris*, 489 U.S. at 390 (holding "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city"). Therefore, Plaintiffs failed to plead an essential element of theirs *Monell* claim.

Moreover, Plaintiff also fails to plead deliberate indifference on behalf of the City. To establish deliberate indifference, Plaintiff must allege "[a] pattern of similar constitutional violations by untrained employees." *Pena*, 879 F.3d at 623 (internal citation omitted). Here, Plaintiffs did not allege a pattern of similar events but instead relied solely on the claim that the Officers' training was deficient. But no particular deficiency was identified and that is insufficient even at the motion to dismiss stage. Thus, Plaintiff failed to plead deliberate indifference.

Since Plaintiffs failed to plead at least one element of their failure-to-train *Monell* claim, Plaintiff claim under Count III is hereby **DISMISSED with prejudice.**

3. Plaintiffs fail to state a claim against the City for failure to supervise or discipline.

Plaintiffs lastly fail to adequately allege that the City's failure to supervise or discipline caused the alleged constitutional violation. To demonstrate that a municipality's failure to investigate or discipline amounts to an unlawful policy or custom, a Plaintiff must prove: (1) the

8

city's failure to discipline amount to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights. *Armstrong*, 60 F.4th at 277.

Plaintiffs' Complaint merely says the "City and Chief Noakes failed to adequately supervise and/or discipline its employees' and "were deliberately indifferent to the need to supervise and/or discipline its officers." ECF No. 1 at 59–60. But there are no other incidents to support this theory, which is insufficient to show deliberate indifference.

This is an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs' allegations against the City are insufficient.

## B. Plaintiff fails to state a claim against Officers Wheelan and Martin.

Plaintiff fails to state a claim against the Officers under § 1983 and the Fourth Amendment.

1. <u>Plaintiffs fail to state a claim against the Officers under § 1983 and the Fourth Amendment.</u>

Because the Officers did not intentionally hit the bystanders, they did not violate the Fourth Amendment by means of excessive force. At issue is "[whether] the state officer's actions caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounts to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." *Shillingford v. Holmes*, 634 F.3d 263, 265 (5th Cir. 1981). Therefore, when a police officer inadvertently hits an innocent bystander as the officer fires at a suspect other than the innocent bystander, the officer does not violate the Constitution. *Estate of Parker v. Mississippi Dept. of Public Safety*, 140 F.4th 226, 242–45 (5th Cir. 2025). And "[a]s other circuits have explained, bystanders are not seized for Fourth Amendment purposes when struck by an errant billet in a shootout." *Moore v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008) (cleaned up). Negligent but unintentional conduct in the use of force does not rise to a seizure in violation of the Fourth Amendment. *Gorman v. Sharpe*, 892 F.3d 172, 173–74 (5th Cir.

2018); *see also United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990) ("Thus, an unarmed suspect shot by a police officer might have a Fourth Amendment claim against the officer. However, an innocent bystander struck by a stray bullet from the officer's weapon would not have such a claim."). For instance, in *Gorman*, a course instructor used his real firearm against a fellow police officer instructor during a training session, accidentally killing him. Yet he was found not liable. Here, the Officers entered a situation in which two other individuals were involved in a shoot out and had to respond with gunfire quickly. So—despite the tragic nature of the situation—the bystanders' Fourth Amendment rights were not violated.

Plaintiffs also seek redress under the Due Process Clause of the Fourteenth Amendment. *Petta v. Rivera*, 143 F.3d 895, 910 (5th Cir. 1998). Bystander excessive force claims can succeed where the bystander has force directed towards them, in reality making them more than a mere bystander. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986). In *Coons*, officers sought Coons after he allegedly committed a hit and run. After believing Coons shot in their direction, they fired back and hit him inside while he was attempting to protect his daughter—knowing that the daughter was likely inside. *Id.* at 1159. Coons's daughter's claim was allowed to proceed, the argument goes, because there was force directed towards her—force "inspired by malice rather than merely careless or unwise excess of zeal" "that shocks the conscience." *Coons*, 780 F.2d at 1163. Similarly, in *Grandstaff v. City of Borger*, Defendant Officers maliciously and recklessly fired rounds of gunfire on a fleeing suspect that had just committed a minor traffic violation before anyone had even fire a shot. 767 F.2d 161 (5th Cir. 1985).

Plaintiffs say likewise here, Officer Martin intentionally fired his weapon knowing and seeing that Plaintiffs were in the line of fire and susceptible to injury. Here, there is no evidence, however, that Defendants intended to shoot in the line of fire of the bystanders. Intent is the critical touchpoint of the analysis. They did not shoot with a reckless disregard for the likelihood that bystanders would be harmed and certainly did not intend to hit the bystanders.

10

Regardless, the Fifth Circuit does not accept reliance on the Fourteenth Amendment substantive due process analysis in excessive force cases because they need to be analyzed under the Fourth Amendment's objective reasonableness test instead of the gross negligence standard previously applied. *Graham*, 490 U.S. at 393–95. Therefore, no constitutional violation took place.

As to the second prong of the qualified immunity analysis, no clearly established right was violated. Plaintiff does not have a clearly established right not to be inadvertently hit by a police officer's gunfire—Plaintiffs set forth no case articulating such a right. In fact, the Fifth Circuit held just fie years ago that an innocent bystander shot by an attempt to hit an active shooter had no right to assert under the Fourth Amendment. *Parker*, 140 F.4th at 242. So the Complaint is deficient on prong two as well.

2.  The Fifth Circuit Does Not Recognize State-Created Danger Theory.

The Plaintiffs also assert a state-created danger theory. In other words, Plaintiffs argue the Officers should be held liable because the Defendants first initiated the shootout unnecessarily—without warning or sufficient efforts to de-escalate the situation—which led to the need to fire the shots that ultimately harmed Plaintiffs. But the state-created danger claim—that the officers created the "unreasonably dangerous" situation, Compl. at 6, is not viable in the Fifth Circuit. *See, e.g.*, *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569 (2024) ("This circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule.")

In sum, Because Plaintiff failed to either prong of the qualified immunity defense, Plaintiff fails to state a claim against Officer Phillips under § 1983 and the Fourth Amendment. As such, those claims are **DISMISSED with prejudice**.

3.  Plaintiffs' claims of collective responsibility are insufficient.

Plaintiffs collectively allege that the Defendants hit them with gunfire, without specifying which Defendant hit which Plaintiff. But, "[t]he court disregards bare assertions of collective responsibility,

unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021). Such shotgun pleading is impermissible, and is therefore dismissed.

**C. The Motion for Leave to Amend the Complaint is Denied.**

Because Plaintiffs have pled their best case, any effort to amend the complaint would be futile. Accordingly, the motion for leave to amend the complaint is hereby **DENIED**.

**CONCLUSION**

For the reasons above, the Court **GRANTS** the City's Motion to Dismiss and the Officers' Motions to Dismiss. Accordingly, all claims against the Officers and the City are **DISMISSED with prejudice.**

**SO ORDERED** on this **29th day of May 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE